UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Douglas W. McLaren

    v.                                                        Civil No. 09-cv-172-PB

Tracy Warren

**REPORT AND RECOMMENDATION**

Before the Court are pleadings filed by Douglas McLaren, a pretrial detainee at the Strafford County House of Corrections ("SCHC"). McLaren files this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment right to adequate medical care and his right to petition the government for a redress of grievances (document nos. 1 & 6)[1]. Because McLaren is a prisoner filing pro se and in forma pauperis, the matter is before me for preliminary review to determine, among other things, whether or not the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR")

---

[1] McLaren initially filed a complaint on May 19, 2009 (document no. 1). On June 9, 2009, McLaren filed an amended complaint (document no. 6). These two documents will be considered, in the aggregate, to be the complaint in this matter for all purposes.

4.3(d)(2).  McLaren has also filed a pleading entitled "Motion for Habeas Corpus" (document no. 11), which appears to be a demand for a jury trial in this matter.

### Standard of Review

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  The court must accept as true the plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and any inferences reasonably drawn therefrom.  See Centro Medico del

Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005). This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

McLaren has been a pretrial detainee at the SCHC since December 15, 2008. On December 30, 2008, McLaren submitted a sick call request slip to the SCHC Medical Department requesting to be placed on a list to be seen by a physician. The December 30 slip was McLaren's fourth request to be placed on the physician appointment list. McLaren wanted to see the doctor so that he could receive over-the-counter pain relievers for a spinal condition that causes him severe and persistent pain in his neck, spine, arms, and legs. McLaren advised SCHC medical staff of his medical and pain issues during his intake at SCHC and through request slips.

McLaren received a response to his December 30 request denying him placement on the physician appointment list. McLaren did not see a doctor until January 7, 2009 when he was called to the SCHC Medical Department for a mental health consultation unrelated to his pain or medical condition. At that time the SCHC Medical Administrator, Nurse Tracey Warren, asked McLaren

why he was walking with a limp.  McLaren told Warren that he was seeking legal advice, presumably due to the lack of medical care he had been provided.  At that point, Warren placed McLaren on a list to receive an appointment for McLaren to see a doctor.

McLaren received a prescription for Altrium to relieve his pain.  Shortly after beginning this medication, McLaren experienced a skin irritation and a breakout of "lumps."  McLaren submitted a request slip to the SCHC Medical Department to obtain treatment for the skin reaction.  The Medical Department responded by telling McLaren to purchase lotion from the SCHC commissary.  On several occasions, McLaren showed the sores that were developing on the back of his head and neck to various SCHC nurses who dispensed his medication.  The nurses told McLaren there was nothing they could do for him.  McLaren ultimately developed more than thirty infected sores on his body due to the SCHC medical department's failure to respond to his requests for care.

On January 31, 2009, SCHC Corrections Officer Daniels noticed infected sores on McLaren.  Daniels asked a Nurse Debra to examine McLaren.  Prior to Daniels' request, no nurse had provided McLaren any care or arranged for him to see a doctor.

McLaren filed a grievance and was granted a hearing in front of the SCHC Grievance Board on March 31, 2009. McLaren lost the hearing. McLaren appealed to the office of SCHC Superintendent Warren Dowaliby. SCHC Assistant Superintendent Capt. Bird told McLaren the decision of the Grievance Board was final and unappealable, and denied him relief without conducting any further investigation of McLaren's allegations. McLaren then sent a letter to Strafford County Administrator Raymond Bower, complaining of his treatment at the SCHC and the findings of the Grievance Board.

Prior to his Grievance Board hearing, McLaren sent several request slips requesting copies of all of the information in his medical file, including sick call request slips and medication dispensing charts, to present to the grievance board. He did not receive any records until several weeks after his hearing. In the medical records received, was an entry by Warren marked "late entry" dated December 25, 2008. In that entry, Warren claimed she met with McLaren and that McLaren was demanding a second mattress. Warren indicated that she placed McLaren on the physician appointment list at that time. McLaren knew this entry to be false, as his December 30, 2008 request to be placed on the

list had in fact been denied, and he had not been placed on the list until January 7, 2009. Upon receipt of these records, McLaren immediately filed a grievance complaining of Warren's false "late entry." McLaren asserts that this entry was added in an attempt to cover up the SCHC's denial of adequate medical care to him.

On April 21, 2009, McLaren met with the SCHC Superintendent. McLaren claims the Superintendent agreed with McLaren that his constitutional right to adequate medical care had been violated, that Warren had been derelict in her duty to provide McLaren with urgent medical care, and that she was also derelict in her duty to maintain accurate medical records. The Superintendent apologized and promised McLaren the matter would be addressed.

On May 2, 2009, McLaren was advised that the Tums antacid he had been receiving from the SCHC Medical Department would be discontinued because he had money in his inmate account and could purchase the antacid himself from the SCHC commissary. McLaren grieved this decision and the action was reversed.

McLaren alleges that on May 5, 2009, Warren gave him a typed letter of apology acknowledging that she was not at the SCHC on December 25, 2008, and stated that the date of the "late entry"

should have been December 23, 2008.  McLaren states Warren also provided him with a copy of his medical records which had again been altered to show the "late entry" occurring on December 23, 2008.  McLaren accepted the letter but told Warren that, in fact, she had not met with him regarding a second mattress, either on December 23 or December 25, and that she had not put him on the list to see a doctor on either of those dates.  Warren refused to retract her statement that the meeting had occurred on December 23.

In April 2009, McLaren was given the medication Darvocet.  In April 2009, McLaren saw Dr. McQuire, who ordered that McLaren be prescribed an alternative medication.  McLaren claims that the SCHC medical staff refused to provide him with alternative medication.  On June 5, 2009, McLaren saw Dr. Donnelly.  Dr. Donnelly advised McLaren that his liver was enlarged, and opined that the enlargement could be due to the Darvocet.

On June 7, 2009, McLaren was able to meet with Bower to discuss his situation, as well as an additional serious medical problem McLaren was having, blood in his stool.  McLaren advised Bower that SCHC Medical Staff was still refusing even to take his vital signs unless and until he filed a grievance seeking medical

care from the SCHC administration. Even then, McLaren advised Bower, he was made to wait two weeks before being seen by a doctor.

## Discussion

I. Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983[2]; Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-331 (1986)); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002). In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Because McLaren

---

[2] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

alleges violations of his federal constitutional rights by state actors, his suit arises under § 1983.

## II. Pretrial Detainee Status

McLaren was a pretrial detainee at the SCHC at the time the events he describes occurred. Detainees have a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free of punishment. See Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997)). If, however, a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, constitute punishment. Bell v. Wolfish, 441 U.S. 520, 537 (1979); O'Connor, 117 F.3d at 15. The restriction or condition imposed, however, must not be exaggerated or excessive relative to its purpose. Bell, 441 U.S. at 538. The issue in evaluating claims by a pretrial detainee, therefore, is ultimately whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment. See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

III. Medical Care Claim

McLaren claims that he was denied access to a physician for more than three weeks for a serious medical pain condition of which the SCHC medical staff was aware, resulting in McLaren experiencing severe untreated pain for that time. McLaren also alleges that, despite repeated request slips and personal pleas to SCHC nurses, McLaren was not provided with medical treatment for his skin irritation until several weeks after his request, when a corrections officer intervened on his behalf. The lack of treatment resulted in McLaren developing numerous infected sores on his body.

To assert a viable cause of action for inadequate medical care under either the Eighth or Fourteenth Amendment, a prisoner must first state facts sufficient to allege that he has not been provided with adequate care for a serious medical need.[3] Farmer

---

[3] The Eighth Amendment protects convicted prison inmates from prison officials acting with deliberate indifference to their serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 831 (1994). The Fourteenth Amendment, which protects the conditions of confinement for pretrial detainees, is at least as protective of a detainee's right to medical and mental health care as the Eighth Amendment. See United States v. Ayala Lopez, 327 F. Supp. 2d 138, 144 (D.P.R. 2004) (citing, inter alia, Fischer v. Winter, 564 F. Supp. 281, 298 (N.D. Cal. 1983) ("Since sentenced inmates may be held under conditions that are punitive, while pretrial inmates may not be, the courts have said that the due process clause affords greater protection to unsentenced inmates than the

v. Brennan, 511 U.S. 825, 831 (1994); Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle, 429 U.S. at 106. The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment. See Estelle, 429 U.S. at 106.

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations. See United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987). This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy. Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a

---

Eighth Amendment affords to the convicted.")). As I find that McLaren's allegations are sufficient to state a claim for an Eighth Amendment violation, I necessarily find that McLaren has alleged a violation of the Fourteenth Amendment.

deliberately indifferent mental state.  Wilson v. Seiter, 501 U.S. 294, 302 (1991).

A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  See Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47); see also Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal citations omitted).

McLaren alleged that he entered the SCHC with a spinal condition that, left untreated, causes him severe and persistent pain in his back, neck, and extremities.  McLaren further alleged that despite their knowledge of his pain condition, and his need for medical attention and treatment, SCHC medical staff members, Warren in particular, refused to provide him with any treatment or a doctor's appointment so that a doctor could prescribe treatment.  McLaren has also alleged a skin condition that, because it was untreated by SCHC medical personnel, even after

McLaren requested treatment and showed nurses his sores, and even though the severity of his condition was apparent to non-medical personnel at the SCHC who sought to obtain medical care on McLaren's behalf, developed into more than thirty infected sores. These allegations suffice to allege the denial of adequate medical care for serious medical conditions.  In an Order issued simultaneously with this Report and Recommendation (the "Simultaneous Order"), I will direct service of these inadequate medical care claims against Warren, the only SCHC medical staff person named as a defendant to this action.[4]

McLaren makes other allegations that he was denied medical care.  In one instance, he states that the SCHC refused to provide him with over-the-counter antacid medication because he had enough money in his inmate account to purchase his own at the jail's commissary.  McLaren also alleges an instance where he made a request to be seen by a doctor concerning blood in his stool and was not provided with a doctor's appointment for at

---

[4] In my May 27, 2009 Order denying McLaren's motion to appoint counsel, I directed McLaren to amend his initial complaint to set forth "what care [he was] denied, when [he was] denied it, and by whom."  McLaren did not, in his amended complaint, name any defendant other than Warren to this action. If McLaren seeks to name any other defendants to this action in the future, he must do so by properly moving to amend his complaint.

least two weeks.  McLaren has failed to allege sufficient facts regarding these allegations to demonstrate that his medical needs in these instances were serious, or that any particular SCHC medical staff member was aware of McLaren's serious medical needs and still denied him treatment.  I recommend that McLaren's inadequate medical care claims based on antacid deprivation or the failure to immediately attend to McLaren's complaint of blood in his stool be dismissed, as McLaren has not at this time alleged sufficient facts to state a constitutional deprivation of adequate medical care in those instances.

IV.  Claim Alleging a Violation of McLaren's Right to Petition the Government for a Redress of Grievances

While there is no constitutional right to the existence of grievance procedures, see Lim v. Stanley, 2005 WL 1712202, *4 n. 13 (D.N.H. 2005), the right to the use of established administrative grievance procedures in a prison context is protected by the constitutional right to petition the government for a redress of grievances.  See Hudson v. Palmer, 468 U.S. 517, 523 (1984); Sprouse v. Babcock, 870 F.2d 450, 452 (8th cir. 1989); Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988). McLaren complains that he was denied access to grievance procedures at the SCHC because, even though he was granted a

14

grievance hearing regarding his complaints about his medical care, he was unable to fully present his case at his hearing. Despite several prehearing requests, Warren did not provide McLaren with a copy of his medical records until several weeks after the Grievance Board hearing.  It stands to reason that, in grieving a problem with medical care, medical records might be essential evidence.  Where, as here, the plaintiff has a due process right to access existing grievance procedures, see Hudson, 468 U.S. at 523; Sprouse, 870 F.2d at 452; Franco, 854 F.2d at 589-90, the interference with McLaren's right to present essential evidence might well violate McLaren's due process rights, if, as is alleged here, such interference effectively deprived McLaren of a fair hearing.  Accordingly, I find that McLaren has stated a claim for the denial of the right to petition the government for a redress of grievances.  I will direct, in the Simultaneous Order, that this claim proceed against Warren, who, as the administrator for the SCHC medical department, is an appropriate defendant to this claim.

V.   Medical Records Claim

McLaren appears to assert a claim alleging a violation of his rights occasioned by Warren's alteration and falsification of

his medical records.  The alteration of medical records, without more, does not allege any constitutional harm or otherwise give rise to a claim actionable under § 1983.  Falsification of records, in certain cases, may result in a claim of impairment of a person's ability to petition the government for a redress of grievances by inhibiting his or her efforts to demonstrate inadequate medical care before the courts or the prison administration.  Such harm is, however, merely speculation here, as McLaren has not alleged sufficient facts to enable me to infer such a deprivation occurred in this case.  Accordingly, I recommend that any claim McLaren intended to raise arising out of the alleged falsification or alteration of McLaren's medical records be dismissed.

## Conclusion

For the foregoing reasons, I will direct, in the Simultaneous Order, that claims alleging the denial of adequate medical care for McLaren's spinal condition and related pain, and his untreated skin condition, and his claim that he was denied the right to petition the government for a redress of grievances based on the denial of his medical records, be served on defendant Warren.  I recommend dismissal of the remaining claims,

alleging the denial of adequate medical care for the deprivation of free antacids and treatment for alleged blood in his stool, and alleging a violation of his rights based simply on the alteration or falsification of his medical records, as those assertions fail to state any claim upon which relief might be granted.

The claims as identified herein will be considered to be the claims raised in the complaint for all purposes.  If McLaren disagrees with this identification of the claims, he must do so by properly objecting to this Report and Recommendation or by moving to amend his complaint.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of</u>

Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

```
                              _____
                              James R. Muirhead
                              United States Magistrate Judge
```

Date:    October 5, 2009

cc:      Douglas W. McLaren, pro se


JM:jba